UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| AMY A.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:21cv240 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 10, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Prior to the DLI, the claimant had the following medically determinable impairments: depression, anxiety, insomnia, obesity, and chronic fatigue syndrome (20 CFR 404.1521 *et seq.*).

4. The claimant did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months prior to the DLI; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not been under a disability, as defined in the Social Security Act, from June 10, 2006, through December 31, 2011, the date last insured (20 CFR 404.1520(c)).

(Tr. 20-25).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 23, 2022. On April 6, 2022 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her

> former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 2 was the determinative inquiry.

In suppport of remand, Plaintiff argues that the ALJ erred in not finding a severe impairment at Step 2 of the sequential analysis. The ALJ found that, before December 31, 2011, Plaintiff had the following medically determinable impairments: depression, anxiety, insomnia, obesity, and chronic fatigue syndrome (Tr. 20). However, the ALJ found that the evidence was "insufficient to establish, by objective clinical findings, impairments that resulted in more than minimal work-related limits for any 12-month period" (Tr. 25). 20 C.F.R. § 404.1521 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.").

While Plaintiff cites symptoms common to people with traumatic brain injury to support her claim (Pl. Br. 17-19), those symptoms are irrelevant to the extent Plaintiff did not experience them herself. *See* 20 C.F.R. § 404.1529(c) ("[W]e must . . . evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity to work."). But even if Plaintiff contends she did experience those symptoms, subjective statements alone do

4

not establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1521, 404.1529(a); Social

Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

Here, the ALJ first considered Plaintiff's injuries associated with a motor vehicle accident but

found that the evidence did not support any lasting effects:

> At [the] hearing, counsel questioned the claimant regarding a remote motor vehicle accident, and although there was offered suggestion that the claimant experienced a cognitive decline following the accident, the claimant testified that she finished course work for a physical therapy degree after she recovered from the accident. While she testified that she had to work much harder during this course of study than she had worked during her undergrad courses, she confirmed that she had completed the physical therapy degree within the typical timeframe. Outside of the claimant's reports of the motor vehicle accident, and a resulting brain injury, the evidence does not establish residuals that resulted in work-related limits prior to the DLI of December 31, 2011.

(Tr. 20). The ALJ then discussed Plaintiff's assertions that the accident nevertheless resulted in

pituitary dysfunction and cognitive symptoms that suggested traumatic brain injury, but which

testing did not substantiate:

> While records of treatment subsequent to the DLI have indicated that the claimant reported that pituitary dysfunction had been present since a motor vehicle accident in 1995 [(Tr. 2640-94)], records prior to the DLI do not corroborate this report. In fact, during a primary care visit on November 15, 2007, the claimant reported that testing performed had confirmed that pituitary and adrenal function was "fine" [(Tr. 2640-94)], and during a primary care visit in January 2019, the claimant confirmed that she had had neuropsychological testing performed that revealed significant depression (the claimant attributed depression to her marriage), but that the testing did not reveal issues stemming from the "TBI" [(Tr. 1484-1613)].

(Tr. 20-21). As a result, the ALJ found that "the evidence does not establish medically

determinable impairments with regard to the prior reported motor vehicle accident or the 'TBI,'

and that it does not establish medically determinable and/or severe endocrine-related

impairments, prior to the DLI" (Tr. 20-21). Plaintiff has not pointed to any evidence showing that

5

the medical record fails to support the ALJ's conclusions. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence."). The Court declines Plaintiff's invitation to re-weigh the evidence. *See L.D.R. v. Berryhill*, 920 F.3d 1147, 1151-52 (7th Cir. 2019) ("[court] review is deferential; [reviewing courts] will not reweigh the evidence or substitute [the court's] judgment for that of the ALJ.").

Plaintiff has also asserted that the ALJ should have found her mental impairments severe as Step 2. However, Plaintiff again relies on symptoms common to people with depression to support her claim but those symptoms are irrelevant to the extent Plaintiff did not experience them herself. *See* 20 C.F.R. § 404.1529(c). But even if Plaintiff contends she did experience those symptoms, subjective statements alone do not establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1521, 404.1529(a); Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). Here, Plaintiff asserts that it was error for the ALJ to have not found her depression severe, but she provides no evidence in support of that assertion and she points to no specific error on the part of the ALJ. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence."). In evaluating Plaintiff's mental impairments, the ALJ observed, "many of the diagnoses were provisional or rule out in nature, and treatment records confirm significant improvement in depression, anxiety, and insomnia, within less than 12 months. Even at the start of treatment, anxiety and depression were reportedly in the mild range" (Tr. 24, 539-674). Specifically, the ALJ explained that examinations were generally normal and showed improvement:

> Examination findings in January 2011, showed intact memory, normal mood and affect, average intellect, and appropriate insight and good judgment. [Plaintiff] was cooperative, calm pleasant and with good eye contact, she was well-groomed, and speech, thought process, and thought content were normal. Rather than a decline, records support improvement in symptoms . . . and they fail to establish mental symptoms that resulted in more than mild functional limits.

(Tr. 24, 539-674). The ALJ concluded, "These treatment notes do not establish significant limitations of function in thought content, thought processing, affect, mood, memory, intellect, comprehension, understanding, application of information, social interaction, adaptation, self-care, persistence, pace, attention, concentration, focus, psychomotor behavior, speech, etc. for twelve months in duration, despite treatment, as of the date last insured" (Tr. 24).

Moreover, the ALJ noted that "the State Agency has determined that only mild limits were present in the 'paragraph B' areas [of functioning]," and the ALJ found "these determinations to be persuasive and supported" (Tr. 24, 76, 85, 95). Thus, the ALJ concluded, "because [Plaintiff's] medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are found to have been not severe" (Tr. 24). *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities").

Plaintiff argues that "Dr. Ray and Dr. Fawver both diagnosed Plaintiff with Recurrent Major Depression." (Pl. Br. 19.) But a "diagnosis alone does not establish the existence of an impairment" and it is Plaintiff's burden "to establish not just the existence of the conditions, but

7

to provide evidence that they support specific limitations affecting [her] capacity to work." *Weaver v. Berryhill*, 746 F. App'x. 574, 579 (7th Cir. 2018). Here, the ALJ reasonably determined that Plaintiff's mental impairments resulted in only mild limitations in the areas of mental functioning (Tr. 24). Thus, there is no error in the ALJ's finding that Plaintiff's mental impairments were not severe. *See* 20 C.F.R. § 404.1520a(d)(1).

Plaintiff also suggests that her treatment for fatigue supports a finding that her depression was severe. In support, Plaintiff only states that, in generalized terms, "fatigue is connected to depression . . . ." (Pl. Br. 21.) Again, Plaintiff fails to point to any evidence relevant to her individualized impairments. Nevertheless, the ALJ addressed how Plaintiff's chronic fatigue syndrome affected her mental functioning (Tr. 23, 24). Specifically, the ALJ observed that mental status examinations were repeatedly normal despite complaints of fatigue:

> While [Plaintiff] reported chronic fatigue syndrome, Epworth Sleepiness Scale was '0.' As to objective findings, [she] was receptive, pleasant, calm, and with good eye contact, and she was cooperative and engaging. [Plaintiff] demonstrated interpersonal relatedness and connectivity, mood/affect was 'full range and appropriate affect,' and thought process was logical, sequential, pertinent, goal directed, coherent, and spontaneous. Thought content was appropriate to topic, no memory disturbance was present, insight was appropriate, and judgment was good. In terms of abnormal findings, 'disposition' was 'mildly anxious,' and [she] was 'very preoccupied with limitations and etiologies related to chronic fatigue.' The mental status examination did not reflect objective observations of fatigue, mental slowing, or abnormal physical findings, and this is the only mental status examination in Dr. Fawver's records until February 20, 2013.

(Tr. 23). Further, the ALJ acknowledged that Plaintiff "reported ongoing and significant fatigue throughout the period [at issue], [but] it remains that physical examinations were routinely normal. As discussed, [Plaintiff] reported in November 2007 that testing had confirmed that pituitary and adrenal functions were 'fine,' joint pain reported in December 2007 was noted to be

8

due to pregnancy, and on September 3, 2008, [she] reported feeling 'fabulous,' after she stopped nursing her child" (Tr. 24). The ALJ also explained that the State agency found no severe impairments before 2012, and "these determinations remain persuasive and consistent with the record" (Tr. 22). Clearly, the record supports the ALJ's finding that Plaintiff's mental impairments, even when combined with fatigue, did not result in more than minimal work-related functional limitations. *See* 20 C.F.R. § 404.1520a(d)(1).

Plaintiff asserts that the ALJ should have considered a brief statement from Dr. Amy Dawson, even though Plaintiff acknowledges that Dr. Dawson's letter was prepared in July 2019—over seven years after the relevant period at issue in this case (Tr. 852, 1306). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence . . . ." *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (citation omitted). The ALJ's articulation need only "be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Statements that a claimant is unable to work are considered "evidence that is inherently neither valuable nor persuasive," and thus the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c). Here, Dr. Dawson stated that Plaintiff "has a permanent disability due to hypopituitarism that has been present since November 5, 2008. She is unable to work due to frequent, unpredictable and severe episodes of fatigue, low cortisol, hyponatremia and hypokalemia" (Tr. 852, 1306). Dr. Dawson's statement concerns the ultimate question of whether Plaintiff is disabled. Thus, under the regulations, the statement is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c).

Although the ALJ was not required to "provide any analysis about how [he] considered

such evidence," 20 C.F.R. § 404.1520b(c), the ALJ's discussion of the medical record shows that he considered these medical conditions (Tr. 20-25). The ALJ found that testing showed normal cortisol levels and thus "any cortisol insufficiency is not established as a medically determinable impairment" before 2012 (Tr. 20). The ALJ also considered allegations of fatigue, but noted that physical examinations and Plaintiff's presentations were normal, and symptoms were mild, as discussed above (Tr. 23, 24). As for her hyponatremia (low blood sodium) and hypokalemia (low potassium), Plaintiff has not provided any evidence to show that these conditions resulted in more than minimal work-related functional limitations. *See Weaver v. Berryhill*, 746 F. App'x. 574, 579 (7th Cir. 2018) (it is the plaintiff's burden "to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting [his] capacity to work.").

As there is no basis for remand on any issue raised by Plaintiff, the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: June 6, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court